UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

              Plaintiff,

              v.

THE CITY OF SEATTLE AND ITS
DEPARTMENT, SEATTLE CITY LIGHT,

              Defendants.

CASE NO.  C-16-889

COMPLAINT FOR INJUNCTIVE
RELIEF

**INTRODUCTION**

    1.    This is an action by the United States of America ("United States") seeking injunctive relief against Defendant the City of Seattle (the "City") and its Department Seattle City Light ("City Light") (collectively, the "City"), to prevent the City from making an unauthorized release of sensitive and confidential Federal Bureau of Investigation ("FBI") information relating to FBI covert video surveillance cameras (the "Protected Information") in response to requests received by the City under the Washington State Public Records Act ("PRA"), RCW 42.56, *et seq*.  The Protected Information at issue in this case is exempt from the PRA, it is subject to federal law enforcement privileges, and it was provided to the City in furtherance of the FBI's criminal and national security missions pursuant to an express

COMPLAINT - 1

agreement that the information would be held in confidence and not used or disclosed for any other purpose without the permission of the FBI.  In addition to injunctive relief, the United States also seeks a declaratory judgment, pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, declaring that the information is subject to federal law enforcement privileges, that the City is prohibited from disclosing it without the consent of the FBI, and that the PRA itself exempts from its public disclosure provisions privileged law enforcement information such as this.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1345.

3.      Venue is proper in the Western District of Washington under 28 U.S.C. § 1391(b)(1) and (b)(2) because Defendants are located within the Western District of Washington, the events complained of occurred in the Western District of Washington, and the threatened harm will occur there.  Finally, the sensitive information that the United States seeks to protect is held by Defendants who are located in the Western District of Washington.

## PARTIES

4.      The United States brings this action seeking affirmative relief on behalf of the FBI.  The FBI is a component agency of the U.S. Department of Justice and is a member of the United States intelligence community.  It is vested with broad responsibility and legal authority to protect and defend the United States against terrorist and foreign intelligence threats and to enforce the criminal laws of the United States.  The FBI has jurisdiction over violations of more than 200 categories of federal crimes, and presents cases for prosecution to both federal and state prosecutors.  It has 56 Field Offices, also referred to as Divisions, centrally located in major metropolitan areas across the United States, including Seattle.

5.      Defendant City of Seattle is a city in the state of Washington.  It is an "agency" as that term is defined in Section 42.56.010 of the PRA.

6.      Defendant Seattle City Light is the public utility providing electrical power to the City of Seattle, and parts of its metropolitan area, including all of Shoreline and Lake

Forest Park and parts of unincorporated King County, Burien, Normandy Park, Seatac, Renton, and Tukwila.  As a department of the City of Seattle, it is an "agency" under Section 42.56.010 of the PRA.

## FACTUAL STATEMENT

### *The FBI's Authorized Use of Technical Surveillance Equipment*

7.      The Technical Collections Branch of the FBI's Operational Technology Division ("OTD") at FBI Headquarters provides technical expertise, services, and specialized training to support the FBI's criminal and national security missions, to include counter-terrorism, counter-intelligence, weapons of mass destruction, and intelligence collection.  The Technical Surveillance Section supports FBI operations by ensuring collection of evidence and intelligence through the application of sophisticated technology and advanced electronic surveillance, including but not limited to, audio and video surveillance, tracking technologies, and design and fabrication of concealments.  The use of certain of these technologies may involve sensitive law enforcement and national security tradecraft, the unauthorized disclosure of which may diminish or destroy the effectiveness of the technique itself or the damage or loss of sensitive FBI equipment, or jeopardize FBI investigative interests and personnel.

8.      Among other types of video surveillance techniques and methods, the FBI may lawfully install a video camera on an existing utility structure, such as a power pole ("pole camera"), in furtherance of an authorized investigation, when use of the method is reasonably likely to achieve investigative objectives.

9.      The FBI's use of surveillance cameras must be distinguished from that of any other state or federal law enforcement agency on two principal grounds.  First, in light of the FBI's unique law enforcement and national security missions, there are particular sensitivities attached to the FBI's use of surveillance equipment and the tradecraft associated with that use.  Second, unlike the use of surveillance cameras by other entities, such as state and local governments or private businesses, which may operate video surveillance cameras in public

COMPLAINT - 3

1  locations to deter crime or promote public safety generally, the FBI utilizes surveillance

2  cameras only in furtherance of an authorized investigation of a particular subject(s).

3        10.     The use of FBI surveillance equipment is authorized by the Attorney General's

4  Guidelines for Domestic FBI Operations,[1] and governed by FBI policy which sets forth

5  specific parameters and guidelines to control the use of surveillance cameras in furtherance of

6  FBI criminal and national security investigations.

7        11.     Every FBI pole camera is associated with a particular subject or particular

8  investigation and is installed in relatively close proximity to where the subject is believed to

9  be or will be located, such as a residence, business, or frequented location.  Thus, disclosure

10 of the location of an FBI surveillance camera nearly always can reasonably be expected to

11 reveal the location of the subject of the investigation.

12       12.   Revelation of the subject of an FBI investigation by the unauthorized disclosure of

13 the location of a current or previously installed pole camera can have a devastating impact on

14 an investigation.  Armed with such knowledge, a subject would not only be able to evade

15 further investigation by the FBI, but would also be able to employ countermeasures to impede

16 further investigation such as destroying, hiding, or otherwise concealing evidence;

17 intimidating or retaliating against cooperating witnesses; or by simply fleeing the jurisdiction.

18 Such disclosure would also allow any individual other than the subject of an investigation

19 who is intent on interfering with or thwarting the investigation to do so.  As such,

20 unauthorized disclosure of the location of a pole camera could threaten the safety of the FBI

21 agents involved with the investigation.

22       13.   Because of their close proximity to the subjects of surveillance, unauthorized

23 disclosure of the locations of current or previously installed pole cameras can reasonably be

24 expected to constitute an unwarranted invasion of privacy for those persons under

25 investigation who have not yet been charged.  It can also reasonably be expected to constitute

26

27 _____

28 [1] Available at: https://www.justice.gov/sites/default/files/ag/legacy/2008/10/03/guidelines.pdf (last
   visited June 3, 2016).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1    an unwarranted invasion of the privacy of innocent third parties not under investigation but
2    geographically near the current or past location of the camera, who may falsely be assumed to
3    be the subject of an FBI investigation.

4            14.     The FBI surveillance cameras themselves, including the identity, technical
5    capabilities, and operational utilization of each system and its component parts, are also very
6    sensitive.  If equipment is stolen, information concerning the capabilities, methods, and
7    limitations of FBI equipment could be used by individuals to exploit and evade FBI
8    surveillance methods.  Revealing such characteristics about these technologies would greatly
9    reduce the effectiveness of these technologies as an investigative tool for the FBI; it also
10   might render the results of the surveillance unreliable.

11           15.     Unauthorized disclosure of the location of a pole camera may cause it to be
12   destroyed.

13           16.     The "concealments" of FBI surveillance cameras—that is, the structures,
14   devices, or artifices, within which surveillance camera are housed—are carefully constructed
15   to prevent the target or any passerby from detecting the surveillance installation.  As such, if a
16   particular concealment becomes publicly identifiable, subjects of the criminal investigation
17   and national security adversaries of the United States will know what to look for to discern
18   whether the FBI is conducting surveillance in a particular location.

19           17.     The federal interests in protecting information concerning the use and
20   installation of an FBI surveillance camera do not diminish with the removal of a camera.  The
21   FBI may remove a pole camera if, for example, a subject changes location or habits; but if the
22   subject returns, the camera may need to be reinstalled.  A target of an FBI investigation who
23   is alerted to the existence of an FBI investigation by disclosure of an existing or previous FBI
24   pole camera trained on the target's current or past location, would then be likely to employ
25   countermeasures to impede further investigation and destroy, hide, or otherwise conceal
26   evidence.  In addition, the FBI sometimes may use the same camera installation location for
27   surveillance in different cases, such as where a particular location is ideally suited for
28   investigative, technical, or other reasons.  For example, a particular location may be ideally

1  suited for installation of surveillance equipment in furtherance of investigation of violation of

2  federal criminal laws in an area of high gang-related crimes.

3      18.     In such cases, publication of the number of FBI pole cameras, and the frequency

4  with which they are used in any particular location, may diminish the effectiveness of the

5  technique, as subjects of criminal or national security investigation may take evasive

6  measures to avoid detection by conducting their affairs in locations where cameras have never

7  historically been used or where they have been used with less frequency.

8      19.     In sum, the FBI's use of the pole camera technique is a powerful tool in FBI

9  investigations of criminal violations and national security threats.  Disclosure of even minor

10 details about them may cause jeopardy to important federal interests because, much like a

11 jigsaw puzzle, each detail may aid adversaries in piecing together information about the

12 capabilities, limitations, and circumstances of equipment's use, and would allow law

13 enforcement subjects, or national security adversaries, to accumulate information and draw

14 conclusions about the FBI's use of this technology, in order to evade effective, lawful

15 investigation by the FBI.

16                          *Coordination with City Light*

17     20.     At the behest of City Light, since approximately 2013, in order to prevent FBI

18 pole cameras from being removed, tampered with, compromised, or destroyed by City Light

19 employees, the FBI has shared limited information with City Light security personnel.

20 Specifically, in order to guard against the loss or destruction of FBI pole cameras and the

21 consequent interference and disruption to corresponding FBI investigations that would result

22 from City Light utility personnel removing or destroying foreign equipment found on City

23 Light poles, the FBI Seattle Division began notifying City Light security personnel when the

24 FBI installed a camera on a City Light pole.

25     21.     This information was shared with a mutual and express understanding that the

26 information would be held by the City in confidence as it was privileged FBI information, as

27 well as a mutual understanding of the limited purpose for which it was shared by the FBI.

28 The limited information provided was the location of the pole, identified by street intersection

or street address; pole number; and dates of its installation, or notification of installation, and removal, or notification of removal, by the FBI.  City Light was also naturally in possession of the name and contact information of an FBI employee in the Seattle Division who was the point of contact for City Light.

*PRA Requests to City of Seattle and Unauthorized Disclosures of FBI Information*

22.     In September 2015, the FBI Seattle Division was informed by the Seattle City Attorney's Office that Seattle City Light had received a request under the PRA from a reporter with KIRO 7, seeking, "all records related to the installation of law enforcement surveillance cameras on Seattle City Light poles and property."  At the same time, the City informed the FBI that it intended to produce two documents containing FBI information in response to the request, copies of which it provided to the FBI for review.

23.     The first document was an email thread between a City Light Security Manager and law enforcement personnel regarding what appeared to potentially be a surveillance camera.  The apparent purpose of the communication, initiated by Doug Williams, City Light Security Manager, was to inquire whether an object observed and photographed by a  City Light customer was a surveillance camera installed by one of their agencies, so that if it was, it could be "add[ed … ] to the list."  Notably, the email begins with Mr. Williams' acknowledgement that "cameras [are] installed for covert needs from your respective organizations on our poles," and concludes by saying, "*As always this is kept confidential*."  *Id.*  (emphasis added).

24.     The second document was a spreadsheet entitled "CCTV-Pole Use by LL."  The spreadsheet contained a list of law enforcement surveillance cameras, identified by location, pole number, law enforcement agency; together with the name and phone number of the agency point of contact, date installed, date removed, and additional "notes."

25.     Both documents contained sensitive FBI law enforcement information regarding FBI pole cameras that had been shared by the FBI in confidence with City Light security personnel after they had expressed agreed to keep it confidential.

COMPLAINT - 7

26.     The FBI strongly objected to release of *any* information provided by the FBI to City, because the information was law enforcement sensitive and subject to an express promise of confidentiality.  However, on October 30, 2015, the City informed the FBI by letter that the City would release all information on the spreadsheet, with the exception of the camera's location, including the name of the FBI employee who was the FBI's point of contact for City Light and the employee's telephone number, as well as the identification of each FBI camera as belonging to the FBI.  The City's October 30, 2015 letter further stated that unless the FBI obtained an injunction prohibiting disclosure within in 10 days, it would unilaterally release the information.  The FBI continued to object strongly to the release of any this information, but did not pursue litigation.

27.     On or about November 20, 2015, the City made an unauthorized release of the two documents, redacting the locations of the FBI pole cameras, but releasing the FBI's other law enforcement sensitive and confidential information.

28.     In January 2016, the City informally notified the U.S. Attorney's Office that, following the City's release of the partially redacted FBI information to KIRO, City Light had received a second PRA request from Phil Mocek, challenging the City's withholding of the redacted information.  Shortly thereafter, the City formally notified the FBI of this request by letter.  In the same notice, the City also stated that it did not intend to withhold any of the confidential and sensitive information which it had redacted in connection with the earlier request, and that it would release all FBI information at issue unless the FBI obtained an injunction prohibiting such release.  Because of the sensitivity of the redacted information, the FBI requested, and the City agreed, to provide adequate time for the FBI to obtain necessary Department of Justice approvals to initiate this litigation.  The City initially gave the FBI until May 13, 2016, to obtain judicial relief, and later extended this time to June 13, 2016.

29.     The FBI has already been injured by the City's unauthorized disclosures.  Because of the violation of the FBI's rights under its confidentiality agreement with City Light, the FBI has ceased any further sharing of information with City Light.  This has been necessary

1  to prevent further jeopardy to the FBI's criminal and national security investigations,

2  potential harm or theft of its equipment, and risks to the safety of FBI personnel and the

3  public.  Discontinuation of the information sharing program was also necessary because

4  public disclosure of the locations of FBI cameras placed at risk the privacy of uncharged

5  and/or entirely innocent third parties.  In the meantime, the absence of communications with

6  City Light has placed FBI equipment at risk of inadvertently being removed or destroyed by

7  City Light personnel.  Such lack of coordination and communication between state and

8  federal government entities is contrary to effective law enforcement and otherwise contrary to

9  public interest in good government.

### FIRST CAUSE OF ACTION
*RCW 42.56.540 Court protection of public records.*

12      30.    The PRA, RCW 42.56.540, authorizes third parties with an interest in the non-

13  disclosure of records to bring injunctive actions against governmental entities to prevent such

14  entities from releasing the records, if they can establish the records are protected either by

15  PRA exemptions or by other non-disclosure statutes or by common law rights, and the

16  disclosure of the records would irreparably damage important federal interests and would not

17  be in the public interest.

18      31.    The release of the Protected Information at issue in this case would irreparably

19  damage vital governmental functions performed by the FBI and would not be in the public

20  interest.

21      32.    The Protected Information at issue in this case constitutes "specific intelligence

22  information and specific investigative records compiled by investigative [and] law

23  enforcement . . . agencies . . . the nondisclosure of which is essential to effective law

24  enforcement or for the protection of any person's right to privacy" which is exempted from

25  mandatory disclosure by RCW 42.56.240.

26      33.    Pursuant to RCW 42.56.540, the FBI is entitled to an Order from this Court

27  barring the Defendants from releasing the Protected Information at issue in this case.

28

**SECOND CAUSE OF ACTION**

*The Protected Information is Subject to Federal Law Enforcement Privileges*

34.     The United States re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 33 of this Complaint.

35.     The federal law enforcement privilege prohibits the disclosure of records or information compiled for law enforcement purposes, where the disclosure of this information: (A) could reasonably be expected to interfere with enforcement proceedings; (B) would deprive a person of a right to a fair trial or an impartial adjudication; (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy; (D) could reasonably be expected to disclose the identity of a confidential source; (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law; or (F) could reasonably be expected to endanger the life or physical safety of any individual.  The federal law enforcement privilege, as developed by the federal courts, was recognized by Congress when it enacted Section 552(b)(7) of the Freedom of Information Act.  *See* 5 U.S.C. § 552(b)(7),

36.     Additionally, federal courts have recognized a common law privilege protecting law enforcement sensitive information, including surveillance techniques, from disclosure in order to protect the effectiveness of the techniques.  The privilege is designed, *inter alia*, to prevent disclosure of law enforcement techniques and procedures that once revealed, could risk future circumvention of the law or compromise of the technique.

37.     Washington State common law also protects an almost identical law enforcement privilege, as was recognized by the legislature in enacting Section RCW 42.56.240 which protects "specific intelligence information and specific investigative records compiled by investigative and law enforcement . . . the nondisclosure of which is essential to effective law enforcement or for the protection of any person's right to privacy."

38.     The FBI's Protected Information is entitled to protection under the above-referenced federal common law privileges, which the City may not abridge; therefore, the

1  City's proposed disclosure is contrary to federal law and to public policy as set forth by the

2  U.S. Congress and the Washington State Legislature.

3       39.    The FBI is therefore entitled to a temporary and permanent injunction

4  prohibiting the City from disclosure of the Protected Information.

5

6                    **THIRD CAUSE OF ACTION**
                     *Common Law Duty of Confidentiality*

7       40.    The United States re-alleges and incorporates by reference the allegations

8  contained in paragraphs 1 through 39 this Complaint.

9       41.    Doug Williams, the Security Manager of City Light, expressly promised and

10  warranted to the FBI that any Protected Information provided to his office would be kept

11  confidential.

12       42.    In reasonable reliance on the representations and promises made by City Light

13  personnel, the FBI provided the Protected Information to City Light, reasonably expecting

14  that it would be used only for the limited purpose for which it was requested, and not for any

15  secondary unauthorized purposes.

16       43.    Equity has long recognized the traditional remedy for a threatened breach of

17  confidentiality is an injunction.  *Snepp*, 445 U.S. at 972.  *See also Pollard v. Photographic*

18  *Co.*, 40 Ch. D. 345, 353 (NY 1888), citing *Prince Albert v. Strange*, 64 Eng. Rep. 293, 295

19  (Chancery, 1849).

20       44.    Because the FBI reasonably relied on the express promises of confidentiality by

21  authorized persons at City Light, it is entitled to injunctive relief to enforce the City's

22  confidentiality obligations, and the City should be prohibited from disclosing the Protected

23  Information.

24

25                   **FOURTH CAUSE OF ACTION**
                      *Common Property Right*

26       45.    The United States re-alleges and incorporates by reference the allegations

27  contained in paragraphs 1 through 44 of this Complaint.

28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

46.     The Protected Information was provided to City Light with the express understanding and agreement by City Light that it would be kept confidential.  As such, the FBI did not waive its right to control the information, and the FBI maintains a common law ownership interest in the Protected Information.

47.     The United States has the authority to enforce its property interest in its information.  *United States v. Napper*, 887 F.2d 1528, 1530 (11th Cir. 1989) (federal interest in control of information recognized, and city ordered to return records to the FBI notwithstanding contrary obligation under state public disclosure law).

48.     The City should therefore be enjoined from releasing the Protected Information exchanged with the City without the express permission of the FBI.

### FIFTH CAUSE OF ACTION
*Declaratory Judgment*

49.     The United States re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 48 of this Complaint.

50.     As an actual, substantial and justiciable controversy exists between the FBI and the City, the FBI seeks a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that the Protected Information exchanged with Seattle City Light and similar Protected Information that may be shared with City Light under similar circumstances in the future is:  (1) exempt under the PRA; (2) subject to applicable federal law enforcement privileges; (3) subject to a federal common law duty of confidentiality; (4) subject to the FBI's common law control interest; and (5) that for all these reasons may not be disclosed for any secondary purpose without the express permission of the FBI.

### PRAYER FOR RELIEF

WHEREFORE, the United States prays that judgment be entered in its favor and against Defendants as follows:

1. On the First through Fourth causes of action, for an Order temporarily and permanently enjoining the City and City Light from releasing the Protected Information at issue in this case.

COMPLAINT - 12

2. On the Fifth cause of action, for an Declaratory Judgment that any similar Protected Information the FBI has shared in the past or may in the future share with the City or City Light for law enforcement purposes is:

    a. exempt under the PRA;

    b. subject to the federal law enforcement privilege;

    c. subject to a federal common law duty of confidentiality;

    d. subject to a common law property interest; and

    e. that the Protected Information may not be disclosed by the City for any other secondary purpose, without the express permission of the FBI.

DATED this June 13, 2016.

Respectfully submitted,

ANNETTE L. HAYES
United States Attorney

s/ *Peter A. Winn*
PETER A. WINN, WSBA#34701
KAYLA C. STAHMAN, CA#228931
Assistant United States Attorney
United States Attorney's Office
700 Stewart Street, Suite 5220
Seattle, Washington 98101-1271
Phone: 206-553-7970
Fax:    206-553-4067
E-mail: Peter.Winn@usdoj.gov
E-mail: kayla.stahman@udsdoj.gov